**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **MICHAEL WOOD**, | **CIVIL ACTION** |
| Plaintiff, | |
| *v.* | **NO. 19-2820-KSM** |
| **SAROJ & MANJU INVESTMENTS PHILADELPHIA LLC** d/b/a PAPA JOHN'S, et al., | |
| Defendants. | |

**<u>MEMORANDUM</u>**

MARSTON, J.                                                                    December 28, 2020

This is a putative class action lawsuit in which Plaintiff Michael Wood alleges that the owners of several pizza restaurants violated the law by underpaying him and other similarly situated pizza delivery drivers.  Presently before the Court is Wood's Amended Unopposed Motion for Preliminary Approval of the Class/Collective Action Settlement; Provisional Certification of the Proposed Settlement Class/Collective Actions; Appointment of Class Counsel; Approval of the Form of Class Notice, Distribution Plan, and Claims Form; and Issuance of a Stay and Setting the Final Approval Hearing ("Motion for Preliminary Approval" or "Motion").[1]  (Doc. No. 26.)  For the following reasons, Wood's Motion will be granted.[2]

---

[1] Unless otherwise noted, terms such as "Final Approval Hearing" have the meanings ascribed in the parties' Settlement and Release Agreement.  (*See* Doc. No. 17-2 at pp. 2–4.)

[2] Wood's amended motion (Doc. No. 26) replaced a prior motion (Doc. No. 17).  That motion is still pending, and will be denied as moot.

I.      **BACKGROUND**

A.      **Background Litigation**

Plaintiff Michael Wood filed this lawsuit against Saroj and Manju Investments

Philadelphia, LLC, Saroj and Manju Investments Pittsburgh, LLC, Sunil Kumar Singh, and

Manish Singh in June of 2019.  (Doc. No. 1.)  Defendants own several Papa John's pizza

franchises in Philadelphia and Pittsburgh.[3]  (*Id.* at ¶ 1; *see also* Doc. No. 17 at p. 10.)  Wood

alleges that Defendants violated the Fair Labor Standards Act ("FLSA") and Pennsylvania wage

and hour laws by paying their pizza delivery drivers a 5 percent commission per delivery, rather

than the Internal Revenue Service ("IRS") mileage reimbursement rate or other similar

reimbursement rate.  (Doc. No. 1 at ¶¶ 13–31.)  Wood brought suit on behalf of himself and

other pizza delivery drivers who worked for Defendants between June 2016 and the present.  (*Id.*

at ¶¶ 36–49; Doc. No. 17 at p. 11.).

Shortly after this matter was filed, the parties agreed to enter mediation.  (*E.g.*, Doc. No.

6.)  The Court issued a temporary stay to allow time for the mediation.  (*Id.*)  In January 2020,

the parties engaged in a full-day mediation session with the Honorable Stephen M. Orlofsky, a

retired Judge of the United States District Court for the District of New Jersey.  (Doc. No. 8.)

Although this day of mediation was productive, it did not result in a settlement agreement, and

the parties requested an extension of the stay so that they could continue settlement negotiations

and participate in another day of mediation.  (*Id.*)  The Court granted that request, and the parties

engaged in a second mediation session on February 20, 2020.[4]  (Doc. Nos. 9, 10.)  At that

---

[3] Sometime in 2020, after the parties reached their settlement agreement, Defendants sold their
Philadelphia stores.  (Suppl. Prelim. Approval Hr'g Tr. at 10:1–3, 10:24–11:3.)  The parties informed the
Court that the sale does not impact their settlement agreement.  (*Id.* at 11:4–7.)

[4] Pursuant to the terms of the settlement agreement, Defendants agree to pay the mediator's fees for this
second day of mediation.  (Doc. No. 26-2 at ¶ 28; *see also* Prelim. Approval Hr'g Tr. at 22:15–20.)

session, the parties reached a class-wide settlement agreement in principle.  (Doc. No. 10.)

After several more months of negotiation, the parties finalized their settlement agreement (*see, e.g.*, Doc. No. 14), and Wood filed his Unopposed Motion for Preliminary Approval (Doc. No. 17).  The Court held a hearing on Wood's motion on November 3, 2020.

At the Court's request, Wood filed an amended motion, which included additional and updated information, on November 12, 2020.  (*See* Prelim. Approval Hr'g Tr. at 30:3–20; Doc. No. 26.)  On December 16, 2020, the Court held an additional hearing on Wood's amended motion.

### B.    Settlement Agreement

Under the proposed settlement agreement, Defendants will pay a total amount of $250,000.  (Doc. No. 26-2 at ¶¶ 14, 27.)  Defendants have agreed to make a series of payments, and the settlement will be fully funded by March 15, 2021.  (*Id.* at ¶¶ 28–31.)  The $250,000 will be broken up and put to five different uses.  First, $14,167 will be used to cover the costs of administering the settlement, including mailing settlement notices and processing claim forms.  (*Id.* at ¶ 30.)  Second, $90,000 will go to an FLSA Settlement Fund; in exchange for releasing their federal claims against Defendants, claimants will receive a *pro rata* share of this fund based on the total number of miles they drove during the time period covered by this lawsuit.  (*Id.* at ¶ 31.)  Third, $60,000 will be used to fund *pro rata* payments to class members in exchange for releasing their state law claims; the parties refer to this as the "Rule 23 Fund."  (*Id.*)  The *pro rata* shares will be based on the number of miles driven by each class member.  (*Id.*)  Fourth, Wood will receive $2,500 as a class representative service payment.  (*Id.* at ¶ 29.)  Last, class counsel will receive attorneys' fees not to exceed 33.33% of the maximum settlement amount— that is, not to exceed $83,333.  (*Id.* at ¶ 28.)

The parties have chosen CAC Administrators, LLC ("CAC") to notify class members of the settlement and distribute the settlement funds to class members.  (Doc. No. 26-1 at p. 20.)  CAC is an experienced settlement administration firm that has previously handled at least three class action settlements involving pizza delivery drivers.  (Suppl. Prelim. Approval Hr'g Tr. at 4:11–14.)  CAC was involved in this case early; they fielded questions from Wood's attorneys during the mediation process about what information they would need to effectively administer the settlement.  (*Id.* at 35:17–36:6.)  Defendants will provide CAC with last known addresses, last known telephone numbers, and the last four digits of the social security numbers of all class members.  (Doc. No. 26-2 at ¶ 37.)  CAC will, after cross-checking class members' addresses through the National Change of Address Registry, mail all class members the notice of the settlement and the claim form via first-class mail.  (*Id.*)

Class members who submit a claim form within 60 days of the class notice being mailed will receive a *pro rata* share of the FLSA Settlement Fund and the Rule 23 Fund.  (*Id.* at ¶ 32.)  Participating class members who do not submit a claim form within 60 days are entitled to a *pro rata* share of the Rule 23 Fund, but not of the FLSA Fund.  (*Id.*)  Any unclaimed funds from the FLSA Fund will revert to Defendants, and any checks that go unclaimed from the Rule 23 Fund will go to a yet-to-be-agreed-upon *cy pres* recipient.[5]  (*Id.* at ¶ 31.)

Class members have the opportunity to either object to the terms of the settlement, or opt out of it entirely.  (*Id.* at ¶¶ 40–41.)  Class members may not do both; class members who object to the terms of the settlement agree to be bound by its terms.  (*Id.* at ¶ 41.)  Objections must be sent in writing to CAC within 60 days after CAC mails class members notice of the settlement.  (*Id.*)  Requests to be excluded from the settlement must also be sent to CAC within 60 days.  (*Id.*

---

[5] Once the parties agree upon a *cy pres* recipient, the recipient will be submitted for Court approval.  (*See* Doc. No. 26-2 at ¶ 31.)

at ¶ 42.)

After the settlement receives final approval, Defendants will send CAC sufficient funds to pay the claims of all participating class members, class counsel's attorneys' fees and costs, and the class representative's service award.  (*Id.* at ¶ 38.)  CAC will then promptly send checks to the interested parties.  (*Id.*)  The checks issued to class members will include a release clause which indicates that by negotiating the check, the class member agrees to release all claims against Defendants that were litigated during this suit.  (*Id.*)  CAC will take all steps necessary to ensure that checks returned as undeliverable get to the intended recipient.  (*Id.* at ¶ 43.)

## II.     PROVISIONAL CERTIFICATION OF THE SETTLEMENT CLASS

### A.     Class Action

#### 1.     Legal Standard

The Court may certify class actions for the sole purpose of settlement.  *In re CertainTeed Corp. Roofing Shingle Prods. Liab. Litig.*, 269 F.R.D. 468, 476 (E.D. Pa. 2010) (citing *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods.*, 55 F.3d 768, 786 (3d Cir. 1995)).  In these situations, the court "approves preliminary certification of the class," but reserves "[f]inal certification" until it "rules on whether the final settlement agreement is to be approved."  *Id.* When a court certifies a class for settlement, "it must first find that the class satisfies all the requirements of Rule 23."  *In re Cmty. Bank of N. Va.*, 418 F.3d 277, 300 (3d Cir. 2005).  The "central inquiry . . . is the adequacy of representation."  (*Id.*)

Rules 23(a) and 23(b) of the Federal Rules of Civil Procedure outline the requirements for certifying a class.  Under Rule 23(a), a class action may be permitted only if:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); *see also Reyes v. Netdeposit, LLC*, 802 F.3d 469, 482 (3d Cir. 2015) ("All potential classes must initially satisfy four prerequisites to be certified: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation.").

If the Rule 23(a) conditions are met, then a case may proceed as a class action as long as one of the conditions of Rule 23(b) is also satisfied.  In this case, Wood seeks certification for a class under Rule 23(b)(3), which requires "the court [to] find[] that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  *See also Reyes*, 802 F.3d at 482 (plaintiff must demonstrate "predominance and superiority").

## 2.    Analysis

Wood proposes that the class should consist of "all delivery drivers who worked for Defendants" during the "period dating back to three years prior to the date the Court grants Preliminary Approval of this Settlement."  (Doc. No. 26-2 at ¶¶ 20–21.)[6]  This class meets all six requirements of Rules 23(a) and 23(b).  We will address each requirement in turn.

---

[6] During the supplemental preliminary approval hearing, the parties stated that the settlement agreement contained a "scrivener's error" in defining the Rule 23 class as "All persons who have worked as a delivery driver for Defendants from June 27, 2016 to the date that this Court grants Preliminary Approval of this Settlement."  (*See* Suppl. Prelim. Approval Hr'g Tr. at 27:14–28:12; Doc. No. 26-1 at p. 27.)  The parties asked that the Court revise the Rule 23 class definition and make it identical to the FLSA collective definition.  (Suppl. Prelim. Approval Hr'g Tr. at 28:10-15.)  The Settlement Agreement appears to refer to the FLSA collective definition in the reference to paragraphs 20 and 21.  Given the need for the parties to correct their "scrivener's error," the Court directs the parties to explicitly state the FLSA collective definition in the settlement agreement.

### a.      Rule 23(a) Requirements

*Numerosity*.  While "[t]here is no magic number of class members needed for a suit to proceed as a class action," the Third Circuit has held that "numerosity is generally satisfied if there are more than 40 class members."  *In re Nat'l Football League Players Concussion Inj. Litig.*, 821 F.3d 410, 426 (3d Cir. 2016).  In this case, Wood says that the class includes at least 444 people, and that joinder is therefore impracticable.  (Doc. No. 26-1 at p. 29.)  We agree that a class of 444 people is sufficiently large to satisfy Rule 23(a)'s numerosity requirement.

*Commonality*.  As the Third Circuit has explained, "[a] putative class satisfies Rule 23(a)'s commonality requirement if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class."  *In re Nat'l Football League Players*, 821 F.3d at 426–27 (quoting *Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 382 (3d Cir. 2013)).  It is "easy enough," to meet the requirement, provided that all members of the class have claims that are capable of class-wide resolution.  *Id.*  Here, the commonality requirement is met because each member of the proposed class was employed as a delivery driver by Defendants and was subject to the same reimbursement policy.  (*See* Doc. No. 26-1 at p. 30.)  Thus, this case presents a sufficient degree of commonality, even if the amount of damages each class member is entitled to varies.

*Typicality*.  There is a "'low threshold' for typicality;" provided "the interests of the class and the class representative are aligned," courts will find typicality even when class members' claims are only legally similar, and not factually similar.  *In re Nat'l Football League Players*, 821 F.3d at 427–28 (quoting *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 182–83 (3d Cir. 2001)).  Wood's claims are both legally and factually similar to those of other members of the putative class.  All of Defendants' delivery drivers earned the same pay

and received the same reimbursement rate on their deliveries.  (Doc. No. 26-1 at p. 31.)  These common facts led to the proposed class's common legal claims for violations of state wage and hour laws.  (*See id.*)  While class members undoubtedly differ in the number of miles they drove for Defendants (and thus differ in the severity of the alleged minimum wage violations), there is no indication that Wood is atypical in the number of miles that he drove.  Thus, the proposed class meets Rule 23(a)'s typicality requirement.

Adequacy of Representation.  Courts considering adequacy of representation examine both "the qualifications of class counsel and the class representatives."  *In re Nat'l Football League Players*, 821 F.3d at 428.  Under this prong of the analysis, courts seek "to root out conflicts of interest within the class" and to "uncover conflicts of interest between the named parties and the class they seek to represent."  *Id.* at 428, 430 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997)).  "A class representative must represent a class capably and diligently," but this is a low bar: "'a minimal degree of knowledge' about the litigation is adequate."  *Id.* at 430 (quoting *New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293, 313 (3d Cir. 2007)).  "[T]he linchpin of the adequacy requirement is the alignment of interests and incentives between the representative plaintiffs and the rest of the class."  *In re Cmty. Bank of N. Va.*, 795 F.3d at 393 (quoting *Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 183 (3d Cir. 2012)).

First, the class representative must demonstrate adequate standing.  "A litigant must be a member of the class which he or she seeks to represent at the time the class action is certified by the district court."  *Sosna v. Iowa,* 419 U.S. 393, 403 (1975) (citation omitted).  Here, if Wood prevailed at trial, then the result would be that he suffered damages as a result of the allegations in the complaint.  Accordingly, Wood has standing to assert these claims on behalf of the class.

Second, there is no conflict of interest between Wood and the other proposed class members. Wood's alleged harm—the unreimbursed miles driven as a pizza delivery driver for Defendants—is factually and legally identical to the harm allegedly suffered by every other class member.[7]  (*See* Prelim. Approval Hr'g Tr. at 15:1–2; *id.* at 15:10–13.)  Moreover, Wood has represented the class capably and diligently.  He has provided counsel with the paperwork and information they needed to initiate this case and substantiate his claims.  (*Id.* at 25:9–15.)  Far beyond having "a minimal degree of knowledge" about the case, Wood was reportedly "instrumental" in the mediation sessions that led to the settlement agreement.  (*Id.* at 25:19.)  Wood's attorneys described him as their "boots on the ground" during the settlement negotiation phase, because he was able to verify Defendants' representations and provide context to his attorneys as they reviewed documents.  (Suppl. Prelim. Approval Hr'g Tr. at 30:8–31:14.)  Accordingly, we find that Wood adequately represents the interests of his fellow class members.[8]

---

[7] For this reason, there are also no conflicts of interest within the class.  *See In re Nat'l Football League Players*, 821 F.3d at 432 (no conflict of interest where "the incentives of class members were aligned" by a common injury and structural protections ensured that the interests of class members with a current injury and class members with potential future injuries were both protected); *cf. Amchem Prods., Inc.*, 521 U.S. at 595 (inadequate representation where people with diverse injuries sought to participate as members of a single class).  Unlike the classes in *National Football League Players* and *Amchem*, here there is no potential or actual conflict between class members with an existing injury and class members with an existing future injury.  Pursuant to the terms of the Settlement Agreement, Defendants deny wrongdoing or legal liability, and may have continued with their mileage reimbursement practices at issue in this case.  (*See* Doc 17-2 at ¶ VI(h)(a); Prelim. Approval Hr'g Tr. at 11:5–11).  Accordingly, the proposed settlement class only includes delivery drivers who worked for Defendants "three years prior to the date the Court grants Preliminary Approval of th[e] Settlement."  (Doc. No. 26-2 at ¶¶ 20–21.)  As such, there may be class members who sustain a future injury and their potential future claims are not covered by the terms of this settlement.

[8] We note that one of the terms of the proposed settlement is a $2,500 "service award" to Wood.  (Doc. No. 26-2 at ¶ 29.)  While courts in other circuits have looked skeptically at service awards, *see, e.g.*, *Garner Props. & Mgmt., LLC v. City of Inkster*, 333 F.R.D. 614, 628 (E.D. Mich. 2020), or disallowed them entirely, *see Johnson v. NPAS Sols., LLC*, 975 F.3d 1244, 1260 (11th Cir. 2020), we join our sister court, the District of New Jersey, in finding that "[t]here is substantial precedent from this Circuit supporting approval of incentive payments," *see Somogyi v. Freedom Mortgage Corp.*, Civil No. 17-6546 (RMB/JS), 2020 WL 6146875, *9 (D.N.J. Oct. 20, 2020) (collecting cases).  We will not deviate from that precedent here.

With respect to class counsel, the important factors are whether the attorneys "(1) possessed adequate experience; (2) vigorously prosecuted the action; and (3) acted at arm's length from the defendant." *In re Gen. Motors Corp.*, 55 F.3d at 801. The Third Circuit has indicated that in determining the adequacy of representation, courts should consider the non-exhaustive list of factors in Rule 23(g) for appointing counsel. *See In re Nat'l Football League Players*, 821 F.3d at 429; *see also Sheinberg v. Sorensen*, 606 F.3d 130, 132 (3d Cir. 2010) ("Although questions concerning the adequacy of class counsel were traditionally analyzed under the aegis of the adequate representation requirement of Rule 23(a)(4) of the Federal Rules of Civil Procedure, those questions have, since 2003, been governed by Rule 23(g)."). Those factors include counsel's work in the instant class action, experience in handling class actions or other kinds of complex litigation, knowledge of the applicable laws, and resources available for representing the class. Fed. R. Civ. P. 23(g)(1)(A). Additionally, the court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

Under each of the Rule 23(g)(1)(A) factors, the proposed class counsel—Joe P. Leniski, Jr., Esquire of Branstetter, Stranch & Jennings, PLLC and Patrick Howard, Esquire of Saltz, Mongeluzzi & Bendesky, P.C.[9]—are qualified to "fairly and adequately represent the interests of the class." Both attorneys are experienced in handling class actions, other complex litigation, and the FLSA and state wage and hour claims asserted in this action. Mr. Leniski has been involved in six class actions involving similar claims brought by pizza delivery drivers. (Doc. No. 26-4 at ¶ 6.) These experiences have provided him with an in-depth knowledge of the

---

[9] At the time the proposed settlement was reached, Wood was represented by attorney Charles J. Kocher, Esquire, of Saltz, Mongeluzzi & Bendesky, P.C. However, Mr. Kocher left this firm in August 2020. (Doc. No. 18.) Attorney Patrick Howard, also of Saltz, Mongeluzzi & Bendesky, P.C., took over Wood's case. (Doc. No. 19.)

applicable law. (*See id.* at ¶ 7.) Additionally, his law firm, Branstetter, Stranch & Jennings, PLLC is a nationwide firm committed to dedicating the necessary resources to pursuing the class's interests in this case. (*Id.* at ¶¶ 3, 7.) Similarly, Mr. Howard has been class counsel in many wage and hour class actions, including cases involving delivery driver under-reimbursement. (Doc. No. 26-5 at ¶ 5.) The experiences of both attorneys, along with the time and resources their law firms have dedicated to this case, make them both well qualified to fairly and adequately represent the interests of the class. (*See id.* at ¶¶ 3, 6.)

Not only are Mr. Leniski and Mr. Howard well qualified to pursue this suit, but they have done so with vigor. They have invested almost 300 hours into litigating this case. (Suppl. Prelim. Approval Hr'g Tr. at 22:25–23:2 ("Plaintiff's counsel combined . . . have spent approximately 298 hours in this case since its inception.").) A substantial amount of this time was spent determining the amount each class member was allegedly underpaid by, an arduous process that required counsel to examine base pay, delivery, mileage, and reimbursement data from a three-year period for each of the more than 400 class members. (*Id.* at 15:15–16:1.) Moreover, the parties worked with an experienced mediator to facilitate arm's length negotiations, which weighs in favor of finding adequacy. *See Fulton-Green v. Accolade, Inc.*, Civil Action No. 18-274, 2019 WL 4677954, at *6 (E.D. Pa. Sept. 24, 2019) (same, collecting cases). In sum, the proposed class's interests have been advanced by experienced, dedicated counsel, working at arm's length from Defendants.

The Court finds Rule 23(a)(4) is satisfied here.

### b.    Rule 23(b)(3) Requirements

In addition to meeting the requirements of Rule 23(a), a plaintiff must satisfy Rule 23(b)(3), which requires the Court find that "the questions of law or fact common to class

members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). The key issue under the predominance factor is "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Windsor*, 521 U.S. at 623. The Rule 23(a) commonality analysis is similar to the Rule 23(b) predominance analysis, but the predominance standard "is far more demanding." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 528 (3d Cir. 2004). The Third Circuit has counseled that courts should be "more inclined to find the predominance test met in the settlement context."[10]  *In re Nat'l Football League Players*, 821 F.3d at 434 (quoting *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 304 n.29 (3d Cir. 2011) (*en banc*)).

Here, the predominance requirement is satisfied. The claims of all members of the putative class rely on common questions of fact, because the class members' claims all depend on whether they received a commission per delivery, rather than mileage reimbursement, and whether this policy brought their hourly compensation below the mandated minimum hourly wage. (Doc. No. 26-1 at p. 11.) Similarly, each class member's claims raise an identical question of law: whether Defendants' reimbursement policy, to the extent it brought the drivers' compensation below minimum wage, constituted a violation of Pennsylvania wage and hour laws. (*See id.*) Taken together, these common questions of law and fact predominate over individual factual questions, such as how much each class member's total compensation fell below the required minimum wage. *See Altnor v. Preferred Freezer Servs., Inc.*, 197 F. Supp. 3d 746, 757–58 (E.D. Pa. 2016) ("[I]ndividual class members may have performed their job duties

---

[10] To be clear, the fact that all members of the proposed class have an interest in the settlement itself does not help establish predominance. *See Windsor*, 521 U.S. at 622–23. Nonetheless, the fact that Defendants have agreed to settle not just with Wood, but with hundreds of similarly situated drivers, is a strong signal of the predominance of common factual and legal questions among the drivers' claims.

differently, had different supervisors, and experienced various work conditions.  But Defendant's

[violations of Pennsylvania wage and hour laws] were purportedly common to all class members.

. . . Therefore, questions of law or fact common to the state law class members predominate over

any questions affecting only individual members." (citations omitted)); *cf. Galt v. Eagleville*

*Hosp.*, 310 F. Supp. 3d 483, 492 (E.D. Pa. 2018) (finding the predominance requirement satisfied

where hourly workers were required to work through meal breaks, without finding that all

workers were required to work the same number of uncompensated hours); *Koenig v. Granite*

*City Food & Brewery, Ltd.*, Civil Action No. 16-1396, 2017 WL 2061408, at *5 (W.D. Pa. May

11, 2017) (concluding that the predominance requirement was met for tipped workers who had

"different factual claims" because "the same policies and procedures [applied to] all tipped

employees").

The last requirement for certifying a class is that "a class action is superior to other

available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P.

23(b)(3).  When evaluating this requirement, courts consider "the class members' interests in

individually controlling litigation, the extent and nature of any litigation, the desirability or

undesirability of concentrating the litigation, and the likely difficulties in managing a class

action."  *In re Nat'l Football League Players*, 821 F.3d at 435 (citing Fed. R. Civ. P.

23(b)(3)(A)–(D)).  Superiority can be satisfied where the settlement prevents "duplicative

lawsuits and enables fast processing of a multitude of claims."  *Id.* (quoting *In re Nat'l Football*

*League Players' Concussion Inj. Litig.*, 307 F.R.D. 351, 382 (E.D. Pa. 2015)); *see also Sullivan*,

667 F.3d at 312.

In this case, an analysis of superiority weighs towards granting the provisional class

certification.  At this stage, it is somewhat difficult to assess the extent to which individual class

members' interests in controlling litigation would be harmed by class certification.  Pre-notice, we are unable to evaluate whether individual members care strongly enough about the suit to, for instance, opt out of it.  *See In re Nat'l Football League Players*, 307 F.R.D. at 382 (finding superiority in part because relatively few class members had opted out of the class).  However, as Wood correctly notes, the relatively small size of the claims each class member is entitled to makes it practically difficult—if not impossible—for individual class members to control their own suits.  (*See* Doc. No. 26-1 at p. 35.)  This conclusion is bolstered by Wood's assertion that no other potential class members have initiated their own lawsuits.  (*Id.*)

Wood has slightly overstated his case as to the desirability of concentrating litigation in this forum—the Eastern District of Pennsylvania.  Wood claims that "all Parties and putative class/collective members are located within this district," yet also states that approximately 120 delivery drivers worked for Defendants at their stores located in Pittsburgh.  (*See* Suppl. Prelim. Approval Hr'g Tr. at 10:7–12 ("I believe with the size of the Pittsburgh class or collective, it was approximately 120 people.").)  Thus, the proposed class includes delivery drivers who likely live in both the Eastern and Western Districts.  Nonetheless, because Wood and Defendants apparently reside here, and because more than 300 class members appear to reside in the Philadelphia area (*compare id.* (stating that approximately 120 class members worked in Pittsburgh) *with* Doc. No. 26-1 at p. 12 (stating that the settlement class is comprised of "at least 444 delivery drivers")), we find that it is desirable to concentrate litigation related to the class members' claims here in the Eastern District.

Moreover, it is unlikely that difficulties will arise in managing this class action.  Once we grant preliminary approval of the parties' settlement agreement, only final approval of the settlement agreement remains.  While it is conceivable that a great many members of the class

could object to the terms of the settlement, thus making final approval difficult, this is unlikely. *See* Theodore Eisenberg & Geoffrey Miller, *The Role of Opt-Outs and Objectors in Class Action Litigation: Theoretical and Empirical Issues*, 57 VAND. L. REV. 1529, 1546 (2004) (finding that just 0.1 percent of class members opt out of class actions, and similarly small numbers object). Moreover, even if there were a substantial number of objectors, evaluating their concerns in this case would be much simpler than if they brought entirely separate suits. *See In re Nat'l Football League Players*, 307 F.R.D. at 382.

Accordingly, superiority is met in this case.

***

For these reasons, we find that Rules 23(a) and 23(b)(3) requirements are met in this case, and we will conditionally certify the class.

### B.   Collective Action

#### 1.   Legal Standard

The FLSA allows an employee alleging an FLSA violation to bring an action on "behalf of himself . . . and other employees similarly situated." 29 U.S.C. § 216(b). This is known as a "collective action." It differs from a Rule 23 class action in that aggrieved employees must affirmatively opt into the suit in order to be bound by its result. *Id.* ("No employee shall be a party plaintiff to any [collective] action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."). The process for certifying proposed classes and collectives is also different. *See Reinig v. RBS Citizens, N.A.*, 912 F.3d 115, 132 (3d Cir. 2018). Courts approve FLSA collectives in a two-step process. *See Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 536 (3d Cir. 2012); *Wright v. Lehigh Valley Hosp.*, Civil Action No. 10-431, 2010 WL 3363992, at *2 (E.D. Pa. Aug. 24, 2010). At the first

stage, the court considers whether the collective should be conditionally certified for the purpose of providing notice to class members.[11]  *Halle v. W. Allegheny Health Sys. Inc.*, 842 F.3d 215, 224 (3d Cir. 2016).  This case is currently at the conditional certification stage.

The burden of establishing that the members of the proposed collective are "similarly situated" within the meaning of § 216(b) is on the plaintiff.  *Karlo v. Pittsburgh Glass Works, LLC*, 849 F.3d 61, 85 (2017); *Zavala*, 691 F.3d at 537.  For the Court to grant conditional certification of the collective, Wood must "make a 'modest factual showing'—something beyond mere speculation—to demonstrate a factual nexus between the manner in which the employer's alleged policy affected him . . . and the manner in which it affected the proposed collective action members."  *Halle*, 842 F.3d at 224 (quoting *Zavala*, 691 F.3d at 536 n.4).  Factors courts consider at the conditional certification stage "include, but are not limited to, whether the plaintiffs (1) are employed in the same department, division, and location; (2) advance similar claims; (3) seek substantially the same form of relief; and/or (4) have similar salaries and circumstances of employment."  *Weirbach v. Cellular Connection, LLC*, _ F. Supp. 3d _, Case No. 5:19-cv-05310-JDW, 2020 WL 4674127, at *2 (E.D. Pa. Aug. 12, 2020).

## 2.    Analysis

As with the Rule 23 class, Wood proposes that the FLSA collective be comprised of "all delivery drivers who worked for Defendants" during the "period dating back to three years prior to the date the Court grants Preliminary Approval of this Settlement."  (Doc. No. 26-2 at ¶¶ 20–21.)[12]  Here, three of the four factors identified in *Weirbach*—location of employment, similarity

---

[11] The second stage is known as the "decertification" stage; it takes place "at the close of [collective]-related discovery, when the defendant may move to decertify the [collective]."  *Wright*, 2010 WL 3363992, at *3.

[12] As described above, *supra* note 6, Wood's preliminary approval papers contained a "scrivener's error" and the parties agree the Court should revise the Rule 23 class definition to be identical to the FLSA

of claims, and circumstances of employment—weigh in favor of granting conditional

certification.  The fourth factor—form of relief sought—neither weighs in favor of conditional

certification nor weighs against it.

Each member of the proposed collective worked as a pizza delivery driver for

Defendants.  (*See* Doc. No. 26-1 at p. 36.)  Each driver was reimbursed for his or her mileage in

the same manner.  (*Id.* at p. 37.)  Accordingly, each has identical claims to advance against

Defendants.  (*Id.*)  These similarities are enough to show "that the putative class members were

together the victims of a single decision, policy, or plan."  *Zavala*, 691 F.3d at 535.  Given these

similarities, the fact that members of the proposed collective worked at different stores owned by

Defendants in Pittsburgh and Philadelphia (*see* No. 26-1 at p. 10), is not fatal to conditional

approval.  This Court has previously allowed conditional certification when members of a

proposed collective had the same job, were compensated in the same manner, and brought the

same claims, even if those employees worked for the same employer in different locations.  *See*

*Weirbach*, 2020 WL 4674127, at *3.  We see no reason to deviate from that holding here.

As for whether all members of the proposed collective seek substantially the same form

of relief, that factor is less clear.  In the past, this Court has found this factor to be satisfied when

the named plaintiffs "seek substantially the same form of relief for themselves *and for all*

*members of the proposed class*."  *Caddick v. Tasty Baking Co.*, Case No. 2:19-cv-02106-JDW,

2020 WL 419458, at *3 (E.D. Pa. Jan. 24, 2020) (emphasis added).  Under this standard, the

factor weighs in favor of conditional certification because under the proposed settlement Wood

and all members of the collective would be compensated for unreimbursed miles in the same

---

collective definition.  (*See* Suppl. Prelim. Approval Hr'g Tr. at 27:14–28:12.)  Similarly, Wood's Motion
for Preliminary Approval misidentified the FLSA collective.  (*See* Doc. No. 26-1 at p. 36 (erroneously
describing the FLSA collective as "All persons who have worked as a delivery driver for Defendants from
June 27, 2016 to the date that this Court grants Preliminary Approval of this Settlement")).)

manner.  (Doc. No. 26-2 at ¶ 31.)  We note, however, that at this stage of the proceedings, Wood

is the only member of the proposed collective presently before the Court.  Other members of the

proposed collective necessarily seek the same relief as Wood because, for the time being, Wood

has the sole power to dictate what forms of relief the collective seeks.  While this does not

prevent conditional certification of the collective, we will carefully consider whether other

members of the collective seek, for instance, prospective relief against Defendants before

granting final certification.

Based on our analysis of these four factors, Wood has clearly met his burden of making a

modest factual showing that the fellow members of his proposed collective are "employees

similarly situated" to him within the meaning of § 216(b).  Indeed, as illustrated above,

Defendants' alleged misconduct impacted Wood in the same "manner in which it affected the

proposed collective action members."  *Halle*, 842 F.3d at 224.  Additionally, we note that while

it is certainly not dispositive, the fact that Defendants—who are in the best position to know, for

instance, the circumstances of employment of the proposed collective—do not oppose Wood's

motion for conditional certification weighs in favor of the proposed collective.  For all of these

reasons, we will grant conditional certification of the proposed collective.

## III.    APPOINTING CLASS REPRESENTATIVE

Appointment of the class representative is governed by Rule 23(a) of the Federal Rules of

Civil Procedure, which requires that Wood's claims be "typical of the claims . . . of the class"

and that "he will fairly and adequately protect the interests of the class."  For the reasons

previously discussed in Part II.A.2, those requirements are met here, and the Court will appoint

Michael Wood as representative of the settlement class.

## IV.    APPOINTING CLASS COUNSEL

Rule 23(g) of the Federal Rules of Civil Procedure provides the standard for the appointment of class counsel.  Class counsel are responsible not just for representing the interests of the class representative, but for "fairly and adequately represent[ing] the interests of the class."  Fed. R. Civ. P. 23(g)(4).  As discussed above in Part II.B.2, Rule 23(g) provides a non-exclusive list of factors courts should consider when appointing class counsel.  For the reasons previously discussed, we find that Branstetter, Stranch and Jennings, PLLC and Saltz, Mongeluzzi & Bendesky have the ability and resources to "fairly and adequately represent the interests of the class."  Accordingly, they will be conditionally appointed as class counsel.

## V.    PRELIMINARY APPROVAL OF THE CLASS SETTLEMENT

### A.    Legal Standard

Preliminary approval of a proposed class-action settlement is left to the discretion of the trial court, and is based on an examination of whether the proposed settlement is "likely" to be approved under Rule 23(e)(2).  Fed. R. Civ. P. 23(e)(1)(B)(i); *see In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 299 (3d Cir. 1998); *see also In re Traffic Exec. Ass'n-E. R.R.s*, 627 F.2d 631, 634 (2d Cir. 1980) ("[Preliminary approval] is at most a determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness.").  Preliminary approval is not a commitment to approve the final settlement.  "[R]ather, it is a determination that 'there are no obvious deficiencies and the settlement falls within the range of reason.'"  *Gates v. Rohm & Haas Co.*, 248 F.R.D. 434, 438 (E.D. Pa. 2008) (quoting *Smith v. Pro. Billing & Mgmt. Servs., Inc.*, Civil No. 06-4453 (JEI), 2007 WL 4191749, at *1 (D.N.J. Nov. 21, 2007)).  The settlement is entitled to "an initial presumption of fairness" if "the court finds that: (1) the negotiations

occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *In re Gen. Motors Corp.*, 55 F.3d at 785.

Despite the relatively low bar for preliminary approval, the court does not act as a mere rubber stamp for the parties' proposed agreement. This is particularly true when a proposed settlement will impact the legal rights of individuals who are not yet represented in the litigation and likely are unaware the litigation exists. In that situation, unscrupulous counsel, and, to some extent, representative plaintiffs, may seek disproportionately high fees by settling a case quickly, on terms unfavorable to absent class members and without having done much work on the case. These issues are compounded in cases where, as here, each individual class member is entitled to only a relatively small recovery through the settlement, and will accordingly be disincentivized from obtaining outside counsel. For these reasons, courts evaluating a settlement have a "fiduciary responsibility, as the guardian[s] of the rights of the absentee class members." *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975); *see also In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 349 (3d Cir. 2010) ("[T]rial judges bear the important responsibility of protecting absent class members.").

**B.    Analysis**

After review of the proposed settlement agreement and proposed notice and claim form, we are satisfied that the proposed settlement meets the criteria for preliminary approval. In the preliminary approval phase, we are tasked only with determining whether "the proposed settlement discloses grounds to doubt its fairness or other obvious deficiencies such as unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys, and whether it appears to fall within the range of possible approval."

*In re Nat'l Football League Players' Concussion Inj. Litig.*, 301 F.R.D. 191, 198 (E.D. Pa. 2014) (quoting *Mehling v. N.Y. Life Ins. Co.*, 246 F.R.D. 467, 472 (E.D. Pa. 2007)).  The proposed settlement at issue here does not raise any doubts as to fairness, or otherwise reveal any deficiencies.

Most notably, class members will substantially benefit from the proposed settlement terms.  Defendants are paying out $150,000 to the members of the Rule 23 class and FLSA collective.  (Doc. No. 26-2 at ¶ 31.)  This is perhaps not the most that individual class members could have won had this case gone to trial, but it is a substantial recovery given the class's litigation risks.  Wood's counsel informed the Court at the supplemental preliminary approval hearing that, based on extensive review of documentary evidence, they determined that class members had been underpaid by approximately $170,000.  (Suppl. Prelim. Approval Hr'g Tr. at 16:3–5.)  At best, Wood's attorneys hoped to recover approximately $340,000 if they won at trial.  (*Id.* at 16:13–15.)[13]  The total amount recovered in the settlement is approximately 73.5 percent of Wood's attorneys' best estimate of what they could recover on behalf of the class, and the class will recover 88.2 percent of their estimated damages.  Moreover, even if the class were able to recover the full $340,000 in damages at trial, that recovery would have been offset by expenses that Wood's attorneys estimate could have been "several hundred of thousand dollars." (*Id.* at 24:8–11.)

Under the settlement agreement, class members will recover almost all of their actual damages, and will avoid hundreds of thousands of dollars in costs.  We agree with defense

---

[13] This figure comes from doubling the class's $170,000 in purported damages, as the FLSA allows employees to collect "liquidated damages," equal to twice the amount of actual damages, in certain situations.  *See* 29 U.S.C. § 216(b); *Souryavong v. Lackawanna County*, 872 F.3d 122, 125 (3d Cir. 2017).

counsel that Wood's attorneys can be "justly proud" of this outcome.  (*Id.* at 17:5–6.)  The amount of the class members' recovery means that they gain a significant benefit despite the fact that they have not been given any prospective relief.[14]

Nor was this substantially beneficial result an accident.  To date, Wood's attorneys have spent almost 300 hours pursuing this case on behalf of the settlement class.  (Suppl. Prelim. Approval Hr'g Tr. at 22:25–23:2 ("Plaintiff's counsel combined . . . have spent approximately 298 hours in this case since its inception.").)  As described above, a significant amount of this time was spent examining base pay, delivery, mileage, and reimbursement data for a three-year period for each of the more than 400 class members.  (*Id.* at 15:15–16:1.)  This considerable effort at discovery put Wood's attorneys in a strong position to negotiate a settlement that would greatly benefit all class members.

We are also satisfied that the form and content of the notice to the settlement class is adequate.  For class notice to be adequate in this case, it must meet two requirements.  First, Rule 23(c)(2)(B) requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Additionally, principles of due process "require[] that notice be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'"  *In re Nat'l Football League Players*, 821 F.3d at 435 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).  The notice

---

[14] At the supplemental preliminary approval hearing, Wood's counsel informed us that the settlement in this case is "very similar in form to settlements in other pizza driver mileage reimbursement cases . . . that [he] and others have litigated."  (Suppl. Prelim. Approval Hr'g Tr. at 12:14–16.)  However, while the total amount recovered on behalf of the class is similar in this case to recoveries in comparable cases, Wood's attorney stated that this case "stand[s] on its own" in that class members will recover a substantial portion of their damages.  (*See id.* at 12:4–17:2.)

documents must provide a detailed description of the settlement, the circumstances leading to it, and the consequences of objecting or opting out.  *See In re Diet Drugs Prods. Liab. Litig.*, 369 F.3d 293, 310–12 (3d Cir. 2004).

Here, we find that the requirements of Rule 23 and due process are satisfied by the parties' proposed notice plan.  CAC will notify potential class members of the settlement by sending them a notice via first-class mail.[15]  (Doc. No. 26-2 at ¶ 37.)  They will use mailing addresses for class members obtained from Defendants' employment records.  (*Id.*)  CAC will cross-check the addresses provided against the National Change of Address Registry, to ensure that they have the most current possible addresses for all class members.  (*Id.*)  We find that notice via first-class mail in this form meets the Rule 23 and due process requirements, because it is the best notice practicable under the circumstances and is reasonably calculated to provide actual notice to all potential class members.  *See, e.g.*, *Uschold v. NSMG Shared Servs., LLC*, 333 F.R.D. 157, 173 (N.D. Cal. 2019) (allowing notification via direct mail alone); *Lane v. Campus Fed. Credit Union*, No. 16-CV-37-JWD-EWD, 2017 WL 3719976, at *10 (M.D. La. May 16, 2017) (same); *Thieriot v. Celtic Ins. Co.*, No. C 10-04462 LB, 2011 WL 109636, at *6 (N.D. Cal. Jan. 13, 2011) (same).

Moreover, we are satisfied that the content of the proposed notice satisfies Rule 23 and

---

[15] CAC will also create a website that will provide class members with background information about the case, information about the settlement, and instructions on how to collect or opt out.  (Doc. No. 26-6 at ¶ 10.)  Wood's attorneys have provided the Court with three examples of settlement websites that CAC has created in the past that are substantially similar to the website that will be used for this case.  *See Food Lion Overtime Case*, https://foodlionovertimelawsuit.com/ (settlement website for *Ratcliffe v. Food Lion, LLC*, No. 3:18-cv-01177 (M.D. Tenn.)); *Hopkins v. Aerocare Holdings, Inc., et al.*, http://aerocareoncallsettlement.com/ (settlement website for *Hopkins v. Aerocare Holdings, Inc., et al.*, Case No. 2:19-cv-04054 (W.D. Mo.)); *Huffman v. Team Carolinas, Inc.*, http://teamcarolinassettlement.com/ (settlement website for *Huffman v. Team Carolinas, Inc.*, No. 4:19-cv-34 (E.D.N.C.)).  We find that in addition to CAC's first-class mailings, the settlement website will help ensure that "interested parties [are apprised] of the pendency of the action and afford them an opportunity to present their objections.'"  *In re Nat'l Football League Players*, 821 F.3d at 435 (quoting *Mullane*, 339 U.S. at 314).

due process.  The notice explains, in plain language, the genesis of the lawsuit, who the interested parties are (including class counsel and Wood), how the suit came to be settled, how class members' claims will be calculated, the process for making a claim, the process for opting out of the settlement, the process for objecting to the settlement, and the consequences of opting out or objecting to the settlement.  (*See generally* Doc. No. 26-3.)

We note three issues with the proposed class notice that will have to be corrected before the notice is mailed to class members.  First, the version of the notice attached to Wood's Motion for Preliminary Approval includes the erroneous class definition.  (*See* Suppl. Prelim. Approval Hr'g Tr. at 27:14–28:12).  Due to a "scrivener's error" (*see id.*), the class notice addresses the class as "All persons who have worked as a delivery driver for Defendants from June 27, 2016 to the date that this Court grants Preliminary Approval of this Settlement."  (Doc. No. 26-3 at p. 1.) Before the class notice is sent out, that reference should be corrected to refer to the class as:  "All delivery drivers who worked for Defendants during the period dating back to three years prior to December 28, 2020."  Second, and similarly, the definition of the Rule 23 class and the FLSA collective on page 3 of the class notice should be corrected to refer to the class and collective as "All delivery drivers who worked for Defendants during the period dating back to three years prior to December 28, 2020."  Third, the class notice includes no reference to the settlement website.  Before the notice is sent to the class members, a sentence must be added to the end of the first paragraph in Part XIV of the class notice.  This sentence will read:  "You may also find additional information on the settlement website at [web address for the settlement website]."

With these corrections, the proposed notice will ensure that "interested parties [are apprised] of the pendency of the action and afford them an opportunity to present their objections."  *In re Nat'l Football League Players*, 821 F.3d at 435 (quoting *Mullane*, 339 U.S. at

314).

With these revisions, we will preliminarily approve the parties' proposed settlement agreement.

## VI.   INJUNCTION

Last, Wood moves for an injunction preventing "Representative Plaintiff and all persons in the Settlement Class from commencing, pursuing, maintaining, enforcing, or prosecuting, either directly or indirectly, any Released Claims in any judicial, administrative, arbitral, or other forum, against any of the Released Parties."  (Doc. No. 26-1 at p. 39.)

The All Writs Act allows the Court to issue "all writs necessary or appropriate in aid of [its] . . . jurisdiction[] and agreeable to the usages and principles of the law."  28 U.S.C. § 1651(a).  The scope of the All Writs Act is limited by the Anti-Injunction Act, which provides that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."  28 U.S.C. § 2283.  Here, Wood justifies his request for an injunction by arguing that the injunction would "aid . . . the Court's authority and jurisdiction."  (Doc. No. 26-1 at p. 39.)

Courts appear to regularly issue injunctions restraining parallel litigation between preliminary approval and final approval of class action settlements.  *See, e.g.*, *Windsor*, 521 U.S. at 597; *In re Diet Drugs*, 369 F.3d at 297–98; *Piper v. Portnoff L. Assocs.*, 262 F. Supp. 2d 520, 529 (E.D. Pa. 2003).  *See generally* 4 WILLIAM B. RUBENSTEIN, NEWBURG ON CLASS ACTIONS § 13:19 (5th ed. 2020 update).  However, the Third Circuit has counseled that the power to enjoin parallel proceedings should be "'construed narrowly' and invoked sparingly."  *In re Diet Drugs*, 369 F.3d at 297 (quoting *In re Diet Drugs*, 282 F.3d 220, 233 (3d Cir. 2002)).  Nonetheless, the

Third Circuit has also recognized that the All Writs Act is appropriately "used to prohibit activities in another court that threaten to undermine a pending settlement in the enjoining court." *Grider v. Keystone Health Plan Cent., Inc.*, 500 F.3d 322, 330 (3d Cir. 2007); *see also In re Diet Drugs*, 369 F.3d at 297.

Given Wood's representation that no parallel litigation has been filed (*see* Doc. No. 26-1 at p. 35; *see also* Suppl. Prelim. Approval Hr'g Tr. at 7:7–12), enjoining Wood and other class members from commencing litigation between preliminary and final approval of the proposed settlement would at first glance seem to do little harm and would aid this Court's jurisdiction over the pending settlement. *See Grider*, 500 F.3d at 330; *In re Diet Drugs*, 369 F.3d at 297. However, Wood's proposed injunction would act against all members of the "Settlement Class," and it would, as defined in the parties' settlement agreement, cover "all delivery drivers who worked for Defendants during [the three years prior to preliminary approval]." (Doc. No. 26-2 at ¶¶ 20–21.)

By its terms, then, the proposed injunction would restrict the fundamental right of access to the courts of even those class members who had affirmatively opted out of participating in this case. This would be an impermissibly broad exercise of the Court's power under the All Writs Act. Accordingly, we will issue an injunction preventing "Representative Plaintiff and all persons in the Settlement Class [*who have not affirmatively opted out of this action*] from commencing, pursuing, maintaining, enforcing, or prosecuting, either directly or indirectly, any Released Claims in any judicial, administrative, arbitral, or other forum, against any of the Released Parties." (Doc. No. 26-1 at p. 39.)

## VII.  CONCLUSION

The parties' proposed settlement was negotiated by experienced counsel with the help of

an experienced mediator.  It provides significant benefits to the class members.  We are satisfied

that preliminary approval is appropriate.  Accordingly, Wood's Unopposed Motion for

Preliminary Approval is granted.  A Fairness Hearing is scheduled for Wednesday, April 14,

2021, at 10:00 a.m.

An appropriate order follows.