**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **MICHAEL WOOD**, | **CIVIL ACTION** |
| Plaintiff, | |
| *v.* | **NO. 19-2820-KSM** |
| **SAROJ & MANJU INVESTMENTS PHILADELPHIA LLC** d/b/a PAPA JOHN'S, et al., | |
| Defendants. | |

**<u>MEMORANDUM</u>**

**MARSTON, J.**                                                                    **May 13, 2020**

Plaintiff Michael Wood filed a class and collective action lawsuit against Defendants

Saroj and Manju Investments Philadelphia, LLC, Saroj and Manju Investments Pittsburgh, LLC,

Sunil Kumar Singh, and Manish Singh. Plaintiff alleges that Defendants violated the Fair Labor

Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, the Pennsylvania Wage Payment and

Collection law, 43 Pa. Stat. Ann. §§ 260.1 *et seq.*, and common law, by failing to pay minimum

wages to Plaintiff and similarly situated pizza delivery drivers. (Doc. No. 1.) Plaintiff, on behalf

of a putative class, and Defendants have negotiated a Settlement Agreement to resolve the

allegations in the Complaint. On December 28, 2020, the Court granted Plaintiff's unopposed

motion for preliminary approval of the class and collective action settlement. (Doc. Nos. 31 &

32.) Plaintiff now seeks final approval of the class and collective action settlement. (Doc. No.

34.) Additionally, Plaintiff seeks approval of attorneys' fees, reimbursement of expenses to class

counsel, and a service award to Plaintiff as the class representative. (Doc. No. 33.) For the

reasons that are discussed below, the Court will approve the terms of the class/collective

Settlement Agreement, as well as grant the motion for attorneys' fees, reimbursement of expenses, and the service award.

## I.    FACTS AND PROCEDURAL HISTORY

Because we write primarily for the parties, we provide only limited background. A fuller recitation of the relevant facts is available in the Court's memorandum regarding preliminary settlement approval (Doc. No. 31), which is available at *Wood v. Saroj & Manju Investments Philadelphia LLC*, Civil Action No. 19-2820-KSM, 2020 WL 7711409 (E.D. Pa. Dec. 28, 2020). As relevant to this opinion, the background is as follows.

Mr. Wood filed suit against Defendants, the owners of several Papa John's pizza franchises in Philadelphia and Pittsburgh,[1] in June of 2019, alleging that they underpaid him and other similarly situated pizza delivery drivers. (Doc. No. 1 at ¶¶ 1, 13–31.) Specifically, Mr. Wood alleged that Defendants violated the FLSA, the Pennsylvania Wage Payment and Collection law, and common law by paying their pizza delivery drivers a 5 percent commission per delivery, rather than a per-mile reimbursement rate. (*Id.* at ¶¶ 13–31.)

Shortly after this matter was filed, the parties entered mediation, and the Court issued a temporary stay. (Doc. No. 6.) In early 2020, the parties engaged in two full-day mediation sessions with the Honorable Stephen M. Orlofsky, a retired Judge of the United States District Court for the District of New Jersey. (Doc. Nos. 8–10.) At the second of these sessions, the parties reached a class-wide settlement agreement in principle, which is more fully discussed below in Part II. (Doc. No. 10.)

After this agreement was finalized, Mr. Wood filed an unopposed motion for preliminary approval of the proposed settlement and provisional certification. (Doc. No. 17.) The Court held

---

[1] Sometime in 2020, after the parties reached their Settlement Agreement, Defendants sold their Philadelphia stores. (Suppl. Prelim. Approval Hr'g Tr. at 10:1–3, 10:24–11:3.)

a hearing on Mr. Wood's motion on November 3, 2020. To address concerns raised by the Court, Mr. Wood filed an amended motion. (Doc. No. 26). On December 16, 2020, the Court held a second hearing on the request for preliminary approval, after which the Court granted preliminary settlement approval, preliminarily certified a Rule 23 class and an FLSA collective, and authorized notice of the settlement to the class and collective. *Wood*, 2020 WL 7711409, at *8, *10–11.

Following the Court's grant of preliminary approval, Defendants provided a list of the 532 eligible class/collective members to the parties' chosen settlement administrator, CAC Services Group, LLC. (Doc. No. 34-3 at ¶¶ 1, 7.) This list included the members' names, last known addresses, last known phone numbers, and social security numbers. (*Id.* at ¶ 7.) CAC used information from this list to develop a list of updated addresses for the class/collective members, and sent all 532 eligible class/collective members notice via first-class mail. (*Id.*) Ultimately, CAC was unable to ensure delivery of 38 of these notice packets. (*Id.* at ¶ 10.) CAC received no requests for exclusion from the settlement or objections to its terms, but it did receive 110 claims forms from people seeking to participate in the FLSA Settlement Fund. (*Id.* at ¶¶ 12–13 (identifying 109 opt-ins); Doc. No. 35 (identifying a late opt-in that the parties agreed could participate in this matter).)

On March 15, 2021, Mr. Wood filed an unopposed motion for approval of attorneys' fees ($83,333) and costs ($8,564.90) and a service award to himself ($2,500). (Doc. No. 33.) On March 29, 2021, Mr. Wood filed an unopposed motion for final approval of the parties' Settlement Agreement. (Doc. No. 34.) The Court held a fairness hearing with counsel on April 14, 2021. No members of the class/collective attended the hearing.

## II.     THE SETTLEMENT AGREEMENT

The Settlement Agreement sets forth a Rule 23 class and FLSA settlement collective comprising "All delivery drivers who worked for Defendants during the period dating back to three years prior to December 28, 2020." (Doc. No. 34 at p. 1; *see also Wood*, 2020 WL 7711409, at *3, *9.)[2]

According to the terms of the Settlement Agreement, upon judicial approval, Defendants will pay a total of $250,000. (Doc. No. 26-2 at ¶¶ 14, 27.) The $250,000 will be broken up and put to five different uses. First, $14,167 is earmarked to cover the costs of administering the settlement, including mailing settlement notices and processing claim forms. (*Id.* at ¶ 30.) Second, $90,000 will go to an FLSA Settlement Fund; in exchange for releasing their federal claims against Defendants, claimants will receive a *pro rata* share of this fund based on the total number of miles they drove during the time period covered by this lawsuit. (*Id.* at ¶ 31.) Third, $60,000 will be used to fund *pro rata* payments to class members in exchange for releasing their state law claims; the parties refer to this as the "Rule 23 Fund." (*Id.*) The *pro rata* shares will be based on the number of miles driven by each class member. (*Id.*) Fourth, Plaintiff will receive $2,500 as a class representative service payment. (*Id.* at ¶ 29.) Last, class counsel will receive attorneys' fees not to exceed 33.33% of the maximum settlement amount—that is, not to exceed

---

[2] The version of the Settlement Agreement that the parties submitted to the Court (Doc. No. 26-2), contained a "scrivener's error" that mistakenly defined the Rule 23 class as "All persons who have worked as a delivery driver for Defendants from June 27, 2016 to the date that this Court grants Preliminary Approval of this Settlement." (*See* Suppl. Prelim. Approval Hr'g Tr. at 27:14–28:12; Doc. No. 26-2 at ¶ 35.) The Settlement Agreement also did not explicitly define the FLSA collective. (*See* Doc. No. 26-2 at ¶¶ 20–21; *Wood*, 2020 WL 7711409, at *3 n.6.) After consultation with and agreement of the parties, the Court granted preliminary certification to a Rule 23 class and FLSA collective comprising "All delivery drivers who worked for Defendants during the period dating back to three years prior to December 28, 2020." (*See* Doc. No. 32 at ¶ 9.) The Court directed the parties to correct the erroneous class and collective definitions in their Settlement Agreement. *Wood*, 2020 WL 7711409, at *3 n.6.

$83,333.  (*Id.* at ¶ 28.)

Class members who submitted a claim form within 60 days of the class notice being mailed will receive a *pro rata* share of the FLSA Settlement Fund and the Rule 23 Fund.  (*Id.* at ¶ 32.)  Participating class members who did not submit a claim form within 60 days are entitled to a *pro rata* share of the Rule 23 Fund, but not of the FLSA Fund.  (*Id.*)  Any unclaimed funds from the FLSA Fund revert to Defendants, and any checks that go unclaimed from the Rule 23 Fund will go to the parties' agreed-upon *cy pres* recipient, the Community Legal Services of Philadelphia.  (*Id.* at ¶ 31; Doc. No. 34-1 at p. 32.)

Although they agreed to settle this case, Defendants do not concede liability, and continue to maintain that their reimbursement practices were lawful.  (Doc. No. 26-2 at p. 20.)  In exchange for the benefits it provides to the class/collective, the Settlement Agreement provides that the class/collective members will release certain claims against Defendants.  Specifically, individuals who have opted into the collective agree to waive all wage and hour claims under the FLSA and state law against defendants going back to December 28, 2017.  (Doc. No. 26-2 at ¶ 45.)  Class members who did not opt into the FLSA collective but did not opt out of the Rule 23 class waive their wage and hour claims against Defendants going back to December 28, 2017, but not any FLSA claims.  (*Id.*)  On behalf of himself and all members of the class/collective, Plaintiff waived any claims that he or the class/collective members had against Defendants for attorneys' fees, costs, or expenses arising out of this matter.  (*Id.*)  Last, in exchange for the service award, Plaintiff agreed to waive *any* claims he had against Defendants, not just those arising out of alleged violations of wage and hour laws.  (*Id.*)

## III.  FINAL CERTIFICATION OF THE RULE 23 CLASS

### A.  Legal Standard

Courts may certify class actions for the sole purpose of settlement.  *In re CertainTeed Corp. Roofing Shingle Prods. Liab. Litig.*, 269 F.R.D. 468, 476 (E.D. Pa. 2010) (citing *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods.*, 55 F.3d 768, 786 (3d Cir. 1995)).  In these situations, the court "approves preliminary certification of the class," but reserves "[f]inal certification" until it "rules on whether the final settlement agreement is to be approved."  *Id.* When a court certifies a class for settlement, "it must first find that the class satisfies all the requirements of Rule 23."  *In re Cmty. Bank of N. Va.*, 418 F.3d 277, 300 (3d Cir. 2005).  The "central inquiry . . . is the adequacy of representation."  (*Id.*)

Rules 23(a) and 23(b) of the Federal Rules of Civil Procedure outline the requirements for certifying a class.  Under Rule 23(a), a class action may be permitted only if:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); *see also Reyes v. Netdeposit, LLC*, 802 F.3d 469, 482 (3d Cir. 2015) ("All potential classes must initially satisfy four prerequisites to be certified: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation.").

If the Rule 23(a) conditions are met, then a case may proceed as a class action as long as one of the conditions of Rule 23(b) is also satisfied.  In this case, Mr. Wood seeks certification for a class under Rule 23(b)(3), which requires "the court [to] find[] that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently

adjudicating the controversy." *See also Reyes*, 802 F.3d at 482 (plaintiff must demonstrate "predominance and superiority").

**B.     Analysis**

Mr. Wood seeks final certification of a class comprising "All delivery drivers who worked for Defendants during the period dating back to three years prior to December 28, 2020." (Doc. No. 34 at p. 2, ¶ 1.)  This is the same class for which he previously sought preliminary approval.  (*See* Doc. No. 26-2 at ¶¶ 20–21.)  In the memorandum preliminarily approving the parties' Settlement Agreement, the Court discussed at length the reasons why the class in this case met the requirements for certification.  *See Wood*, 2020 WL 7711409, at *3–8.  Since the Court granted preliminary approval, no facts have arisen that would substantially alter the Court's analysis of the Rule 23(a) and (b) factors.  Accordingly, the Court relies on its previous analysis in concluding that final certification of the Rule 23 class is merited in this case and only briefly reiterates that analysis here.

Specifically, the Court finds that the class, which now includes 532 people, satisfies Rule 23(a)'s numerosity requirement.  *See id.* at *4.  Since each member of the class was employed by Defendants as a pizza delivery driver, Rule 23(a)'s commonality requirement is also met, as all members of the class share common questions of fact (whether they were subject to the same reimbursement policy and whether that reimbursement policy led them to earn less than minimum wage) and law (whether Defendants' reimbursement policy constituted a violation of the FLSA and state law).  *Id.*  Although the class includes drivers who worked for Defendants at stores located in Philadelphia and Pittsburgh, their claims as to reimbursement are identical regardless of the city or store at which they worked, so this fact does not undercut commonality. *See id.* at *9 (discussing the similarities between the Philadelphia and Pittsburgh stores in the

context of conditional certification of the FLSA collective). Mr. Wood's interests are aligned with those of the other class members, and his claims are factually similar and legally identical to the other class members', so Rule 23(a)'s typicality requirement is satisfied. *Id.* Mr. Wood has standing to pursue this action, has no conflict of interest with the other class members, and has represented the members of the class adequately and diligently throughout this litigation. *Id.* at *4–5. Additionally, class counsel possess substantial experience in wage and hour cases, including cases involving pizza delivery drivers, have vigorously prosecuted this action, and have negotiated a strong settlement at arms-length from Defendants. *Id.* at *6. For these reasons, Rule 23(a)'s adequacy requirement is fulfilled. *Id.* at *4–6.

The Rule 23(b) conditions are satisfied as well. Rule 23(b)'s predominance requirement is met because each class member's claims raise similar questions of fact and identical questions of law, and these common factual and legal issues predominate over individual factual questions. *Id.* at *7 (collecting cases). Last, the Court finds that Rule 23(b)'s superiority analysis is also satisfied.

In evaluating superiority, courts consider "the class members' interests in individually controlling litigation, the extent and nature of any litigation, the desirability or undesirability of concentrating the litigation, and the likely difficulties in managing a class action." *In re Nat'l Football League Players*, 821 F.3d at 435 (citing Fed. R. Civ. P. 23(b)(3)(A)–(D)). Superiority can be satisfied where the settlement prevents "duplicative lawsuits and enables fast processing of a multitude of claims." *Id.* (quoting *In re Nat'l Football League Players' Concussion Inj. Litig.*, 307 F.R.D. 351, 382 (E.D. Pa. 2015)); *see also Sullivan v. DB Inv., Inc.*, 667 F.3d 273, 312 (3d Cir. 2011).

At the time the Court granted preliminary approval, the Court found that superiority was

satisfied because individual class members had a relatively small interest in controlling the litigation, particularly given the relatively small size of the recovery each class member was entitled to, because concentration of the litigation in this District was desirable given the large number of class members who reside here, and because consolidating all of the class's claims into this litigation would make them much easier to manage. *Wood*, 2020 WL 7711409, at *8.

These same principles continue to apply. Further, the Court now has additional information that bolsters its superiority analysis. To wit: After the class notice was sent out, there were no objections to the settlement, opt-outs, or requests to participate in the final approval hearing (Doc. No. 34-1 at p. 14), suggesting that individual class members do not have a strong interest in individually managing litigation related to their wage and hour claims against Defendants. Additionally, the lack of objections, opt-outs, or class members participating in the final approval hearing indicates that the class device is a manageable means of handling this litigation. Accordingly, Rule 23(b)'s superiority requirement is satisfied.

For these reasons, we find that the Rule 23(a) and (b) requirements are met in this case, and we will grant final certification to the class.

## IV.    ADEQUACY OF CLASS NOTICE

Because the Court has granted final certification to the class, we must now evaluate the adequacy of notice to the class members. *Fein v. Ditech Fin., LLC*, No. 5:16-cv-00660, 2017 WL 4284116, at *6 (E.D. Pa. Sept. 27, 2017). For class notice to be adequate, it must meet two requirements. First, Rule 23(c)(2)(B) requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Principles of due process "require[ ] that notice be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford

them an opportunity to present their objections.'" *In re Nat'l Football League Players*, 821 F.3d at 435 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).  The notice documents must provide a detailed description of the settlement, the circumstances leading to it, and the consequences of objecting or opting out.  *See In re Diet Drugs Prods. Liab. Litig.*, 369 F.3d 293, 310–12 (3d Cir. 2004).

In granting preliminary approval to the parties' Settlement Agreement, the Court found that the notice plan met these requirements.  *Wood*, 2020 WL 7711409, at *12.  Now that the plan has been executed, the Court finds no reason to change that conclusion.  CAC received a list of 532 eligible class members from Defendants; the list included the class members' names, last known addresses, last known phone numbers, and social security numbers.  (Doc. No. 34-3 at ¶ 7.)  CAC used this information to gather updated addresses for all class members, and then mailed notice packets to all 532 of them via first-class mail.  (*Id.*)  Only 38 of the notice packets ended up being undeliverable.  (*Id.* at ¶ 10.)  This means that, of the 532 class members, 494 of them appear to have received the notice packet through the mail.  This proposition finds additional support in the fact that 110 people who received notice packets opted into the collective action (*see id.* at ¶ 13; Doc. No. 35)—a large percentage of opt-ins.
The Court therefore finds that that notice via first-class mail met the Rule 23 and due process requirements, because it was the best notice practicable under the circumstances and was reasonably calculated to provide actual notice to all potential class members.  *See, e.g.*, *Uschold v. NSMG Shared Servs., LLC*, 333 F.R.D. 157, 173 (N.D. Cal. 2019) (allowing notification via direct mail alone); *Lane v. Campus Fed. Credit Union*, No. 16-CV-37-JWD-EWD, 2017 WL 3719976, at *10 (M.D. La. May 16, 2017) (same); *Thieriot v. Celtic Ins. Co.*, No. C 10-04462 LB, 2011 WL 109636, at *6 (N.D. Cal. Jan. 13, 2011) (same).

## V.     FINAL CERTIFICATION OF THE FLSA COLLECTIVE

### A.     Legal Standard

The FLSA allows an employee alleging an FLSA violation to bring an action on "behalf of himself . . . and other employees similarly situated." 29 U.S.C. § 216(b). This is known as a "collective action." Courts approve FLSA collectives in a two-step process. *See Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 536 (3d Cir. 2012); *Wright v. Lehigh Valley Hosp.*, Civil Action No. 10-431, 2010 WL 3363992, at *2 (E.D. Pa. Aug. 24, 2010). At the first stage, the court considers whether the collective should be conditionally certified for the purpose of providing notice to class members. *Halle v. W. Allegheny Health Sys. Inc.*, 842 F.3d 215, 224 (3d Cir. 2016).

The second stage, at which this case now is, is known as "final certification"; here the burden is on the plaintiff to establish that the members of the proposed collective are "similarly situated" within the meaning of § 216(b). *Karlo v. Pittsburgh Glass Works, LLC*, 849 F.3d 61, 85 (2017); *Halle*, 842 F.3d at 226; *Zavala*, 691 F.3d at 537. Courts consider a number of factors at this stage, including "whether the plaintiffs are employed in the same corporate department, division, and location; whether they advance similar claims; whether they seek substantially the same form of relief; and whether they have similar salaries and circumstances of employment." *Zavala*, 691 F.3d at 536–37. The Third Circuit "endorses an ad hoc approach to this analysis, considering all relevant factors and making a determination on a case-by-case basis as to whether the named plaintiffs have satisfied this burden by a preponderance of the evidence." *Halle*, 842 F.3d at 226

### B.     Analysis

Here, the Court finds that Mr. Wood has carried his burden of showing that he is

similarly situated with the other collective members within the meaning of § 216(b).  As an initial matter, the Court notes that neither Defendants nor potentially eligible members of the collective object to final certification, which weighs in favor of granting it.  *See Keller v. TD Bank, N.A.*, Civil Action No. 12-5054, 2014 WL 5591033, at *9 (E.D. Pa. Nov. 4, 2014).

Additionally, an analysis of the factors identified in *Zavala* indicates that final certification is appropriate.  Although the 110 opt-ins worked at different Papa John's franchises owned by Defendants, they all had the same role:  working as pizza delivery drivers.  As such, they had similar salaries and circumstances of employment, particularly given that they were all subject to the same mileage reimbursement policy.  They all advance the identical claim that they were improperly reimbursed for the mileage they drove while performing deliveries for Defendants.  Finally, they all seek the same form of relief:  compensation for their unreimbursed miles.

For these reasons, the Court finds that the opt-ins are similarly situated to Mr. Wood, and will grant final certification to the collective for purposes of this settlement.

## VI.  FINAL APPROVAL OF THE SETTLEMENT AGREEMENT

Having granted final certification of the Rule 23 class and the FLSA collective, the Court now evaluates the fairness of the proposed settlement.

### A.  Under Rule 23

#### 1.  Legal Standard

Under Federal Rule of Civil Procedure 23(e), a court may approve a class action settlement only after "finding that it is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  District courts have discretion to decide whether to grant final approval to a proposed settlement.  *Girsh v. Jepson*, 521 F.2d 153, 156 (3d Cir. 1975).  Settlements are entitled to "an initial

presumption of fairness" if "the court finds that: (1) the negotiations occurred at arm's length; (2)

there was sufficient discovery; (3) the proponents of the settlement are experienced in similar

litigation; and (4) only a small fraction of the class objected." *In re Gen. Motors Corp.*, 55 F.3d

at 785. However, when, as in this case, the parties seek settlement approval and final class

certification simultaneously, the Court must examine the fairness of the settlement agreement

"even more scrupulous[ly] than usual." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516,

534 (3d Cir. 2004).

In *Girsh v. Jepson*, the Third Circuit identified nine factors that courts should consider in

determining whether a class action settlement is fair, reasonable, and adequate. 521 F.2d at 157.[3]

The *Girsh* factors are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction
> of the class to the settlement; (3) the stage of the proceedings and the amount of
> discovery completed; (4) the risks of establishing liability; (5) the risk of
> establishing damages; (6) the risk of maintaining the class action through the trial;
> (7) the ability of the defendants to withstand a greater judgment; (8) the range of
> reasonableness of the settlement fund in light of the best possible recovery; and
> (9) the range of reasonableness of the settlement fund to a possible recovery in
> light of all the attendant risks of litigation.

*Id.* (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974)) (cleaned up).

### 2. Analysis

The Court finds that the parties' Settlement Agreement is entitled to an initial

presumption of fairness. As the Court found when granting preliminary settlement approval, the

---

[3] As will be discussed in greater detail below in Part VI.B.1, courts in the Third Circuit also use the *Girsh* factors in assessing whether an FLSA collective action settlement is fair and reasonable. To avoid unnecessary duplication, the Court will discuss both the Rule 23 class action elements and the FLSA collective action elements of the parties' Settlement Agreement in its discussion of the *Girsh* factors in Part VI.A.2, and will incorporate that analysis by reference when assessing whether the settlement should be approved pursuant to the FLSA. *See Fein*, 2017 WL 4284116, at *7 ("Because courts also use the *Girsh* factors in evaluating the fairness of settlements of collective actions under the FLSA, the Court applies the factors below to the state law and FLSA claims simultaneously.").

parties' Settlement Agreement is the result of arm's length negotiations conducted by counsel experienced with wage and hour cases, with the help of an experienced mediator, after the benefit of hundreds of hours of work, including extensive examination of base pay, mileage, and reimbursement data over a three-year period for more than 400 members of the class. *Wood*, 2020 WL 7711409, at *8, *11. Additionally, there have been no objections to the settlement from members of the settlement class. (*See* Doc. No. 34-1 at p. 21.)

This initial presumption of fairness is not undercut by the Court's assessment of the *Girsh* factors, which also support settlement. The first factor—the complexity, expense, and likely duration of the litigation—weighs in favor of granting approval. Fully litigating the class's claims would require the parties to make complex legal arguments about which mileage reimbursement rate Defendants were required to use, as well as proving damages for each of the hundreds of delivery drivers who are class members. (*See* Doc. No. 34-1 at pp. 18–21.) This litigation is still in the relatively early stages, and if settlement is not approved, the parties will have to conduct additional extensive discovery, brief certification of the class and collective, file motions for summary judgment, and prepare for a lengthy trial, not to mention a possible appeal—processes that could require several years to complete. Additionally, proving each class/collective member's damages would likely require "several hundred thousand dollars" in expenses—a prohibitively expensive cost, particularly given the relatively small recovery that each class/collective member is entitled to. (*See id.* at pp. 19–20.) Accordingly, this factor weighs in favor of granting approval.

Factor two, the reaction of the class to the settlement, also weighs in favor of approval. No member of the class opted out of the settlement or objected to it. (*Id.* at p. 21.) Additionally, 110 of the 532 eligible collective action members opted into the FLSA collective. (*See id.*)

Counsel informs the Court that this is a very high participation rate for a wage and hour collective action (*id.*), and the Court's own research confirms this assertion, *see, e.g.*, *Hernandez v. Immortal Rise, Inc.*, 306 F.R.D. 91, 100 (E.D.N.Y. 2015) (asserting that a 20 percent participation rate is "well above average" in FLSA class action settlements).  Therefore, this factor weighs in favor of finding the settlement fair.

With respect to the third *Girsh* factor, although the proceedings in this case are still at a relatively early stage, the parties completed a substantial amount of written discovery, including reviewing pay records for hundreds of class/collective members going back for three years. Moreover, the parties engaged in arms-length settlement discussions with the assistance of an experienced mediator.  Despite the early stage of litigation in this matter, the extensive discovery that has already been conducted and the parties' structured settlement negotiations weigh in favor of finding the settlement reasonable.

As for the fourth and fifth *Girsh* factors, there is a risk that Mr. Wood and the members of the class and collective would be unable to establish liability or prove their damages. Defendants continue to disclaim liability, arguing that their drivers were paid sufficient wages under the Pennsylvania Wage Payment and Collection law and the FLSA.  (Doc. No. 34-1 at p. 23.)  Defendants, relying on guidance from the Department of Labor, argue that their method of calculating their drivers' reimbursements is reasonable, and thus not unlawful.  (*Id.* at p. 23 & n.13.)  If the Court, or later, a jury, were to accept either argument, the class's recovery would be significantly reduced or even eliminated.  Also, as mentioned above, proving individual damages for each member of the collective would be costly and difficult.  Accordingly, these factors weigh in favor of settlement approval.

So too with *Girsh* factor six, the risk of maintaining the class through trial.  The parties

have informed the Court that roughly half of the class/collective have arbitration agreements with Defendants, which may be binding. (*Id.* at pp. 24–25.) If settlement is not approved and this matter continues, Defendants will vigorously contest both class and collective certification. (*Id.* at p. 25.) Although, on the facts before it, the Court has found that final certification of both the class and the collective is merited, there is a significant risk to the class/collective that if full discovery were taken on this issue and certification were subject to vigorous opposition, the Court could reach a different decision. Accordingly, this factor weighs in favor of finding the settlement fair and reasonable.

*Girsh* factor seven, the ability of Defendants to withstand a greater judgment, also weighs in favor of settlement approval. The parties have informed the Court that both the individual and corporate Defendants would likely be forced into bankruptcy by a greater judgment. (Doc. No. 34-1 at p. 26.) So, even if victorious at trial, the class and collective likely could not have made a substantially more significant recovery than they have already.

*Girsh* factors eight and nine require the Court to consider the reasonableness of the settlement in light of the best possible recovery the class/collective could have achieved and the attendant risks of litigation; these factors also weigh in favor of approval. First, as mentioned with respect to factor seven, the Court finds that the class/collective is unlikely to have recovered substantially more money even if victorious at trial, given Defendants' relatively unstable financial position. Moreover, the $250,000 paid to the class/collective through the settlement is a substantial recovery given that their total damages were approximately $170,000. *See Wood*, 2020 WL 7711409, at *11. Class counsel anticipated that they would not recover more than $340,000 at trial, so the total amount recovered through the settlement is approximately 73.5 percent of class counsels' best estimate of what they could recover on behalf of the class, and the

class recovers 88.2 percent of its estimated damages. *Id.* This is especially true given that taking this matter to trial would have resulted in hundreds of thousands of dollars of attorneys' fees, which would have substantially diminished the class's total recovery. (Doc. No. 34-1 at pp. 19–20.) And, as discussed above with respect to factors four, five, and six, there is a substantial risk that Plaintiff would have been unable to successfully prosecute this class/collective action through trial. Given this risk, the substantial recovery that class counsel was able to achieve through settlement means that these factors weigh strongly in favor of finding the settlement agreement fair and reasonable.

The parties' Settlement Agreement is entitled to an initial presumption of fairness. An analysis of the *Girsh* factors shows why that presumption is appropriate in this case, as all nine factors favor a finding that the settlement is fair, reasonable, and adequate. The Court approves the parties' Settlement Agreement pursuant to Rule 23(e).

### B.      Under the FLSA

#### 1.      Legal Standard

Courts considering whether to approve settlement of an FLSA action use a three-step process. *See DiFlavis v. Choice Hotels Int'l, Inc.*, Civil Action No. 18-3914, 2020 WL 6728806, at *2 (E.D. Pa. Nov. 16, 2020). First, the Court considers whether "the settlement concerns a 'bona fide dispute.'" *Id.* (quoting *Howard v. Phila. Hous. Auth.*, 197 F. Supp. 3d 773, 777 (E.D. Pa. 2016)). If it does, the Court next considers whether the settlement is "fair and reasonable for the employees." *Id.* (quoting *Howard*, 197 F. Supp. 3d at 777). Last, the Court considers whether the settlement "furthers the FLSA's implementation in the workplace." *Id.* (quoting *Howard*, 197 F. Supp. 3d at 777).

In determining whether there is a bona fide dispute between the employees and the

employer, courts consider whether the dispute involves legal or factual issues, "such as FLSA coverage or computation of back wages."[4] *Lynn's Food Stores, Inc. v. U.S. Dep't of Labor*, 679 F.2d 1350, 1354 (11th Cir. 1982); *see also Bettger v. Crossmark, Inc.*, Civil Action No. 1:13-CV-2030, 2015 WL 279754, at *4 (M.D. Pa. Jan. 22, 2015) ("An agreement resolves a bona fide dispute when there is some doubt as to whether the plaintiff would succeed on the merits at trial."). A bona fide dispute exists when "the dispute . . . fall[s] within the contours of the FLSA and there [is] evidence of the defendant's intent to reject or actual rejection of th[e] claim when it is presented." *Kraus*, 155 F. Supp. 3d at 530.

In determining whether a settlement is fair and reasonable, courts in the Third Circuit use the factors identified by the Third Circuit in *Girsh v. Jepson* to evaluate whether a Rule 23 class action settlement is fair and reasonable. *See DiFlavis*, 2020 WL 6728806, at *3; *In re Chickie's & Pete's Wage & Hour Litig.*, Civil Action No. 12-6820, 2014 WL 911718, at *2–3 (E.D. Pa. Mar. 7, 2014). *But see Kraus*, 155 F. Supp. 3d at 523 n.3 (observing that some of the *Girsh* factors do not apply in the context of FLSA settlements and that "though *Girsh* may suggest the type of factors to be considered in assessing a private FLSA settlement, courts need not fall into the alluring trap of mechanically applying *Girsh* simply because it is the court's duty to assess whether the proposed agreement is fair and reasonable.").

As for whether the settlement advances the purposes of the FLSA, courts consider factors

---

[4] The Court has previously noted that courts in the Third Circuit, relying on *Morris v. Penn Mutual Life Insurance Co.*, Civ. A. No. 87-7063, 1989 WL 14063, at *5 (E.D. Pa. Feb. 21, 1989), have held that a dispute is only bona fide if it involves factual, not legal, matters. *See Johnson v. City of Philadelphia*, Civil Action No. 19-4264, 2021 WL 1387504, at *4 n.8 (E.D. Pa. Apr. 13, 2021) (collecting cases). *Morris* dealt with whether a pre-litigation agreement could compromise a plaintiff's ability to bring suit under the FLSA. *Morris*, 1989 WL 14063, at *1. In that context, the court held that a plaintiff could waive her right to bring suit under the FLSA based on a factual dispute, but not based on a legal dispute. *Id.* at *5. The Court finds, as it did in *Johnson*, that the *Morris* holding limiting "bona fide" settlements to those resolving factual disputes rather than legal ones does not apply to court-supervised FLSA settlements. *See Johnson*, 2021 WL 1387504, at *4 n.8.

such as whether the settlement agreement is narrowly tailored such that it resolves only the employees' wage and hour claims and whether the agreement contains a confidentiality clause that would frustrate the FLSA's "informational objective." *In re Chickie's*, 2014 WL 911718, at *3; *DiFlavio*, 2020 WL 6728806, at *7–8.

### 2. Analysis

Here, the settlement meets all the requirements for approval. First, the parties have a bona fide dispute, given the factual and legal issues in this matter. Defendants maintain that they did not underpay Mr. Wood and the other members of the class/collective. (Doc. No. 34-1 at p. 29.) They specifically contradict Mr. Wood's assertion that, due to improper mileage reimbursement, Defendants' delivery drivers were paid less than minimum wage, arguing instead that counting tip credit and commission, their drivers received lawful wages. (*Id.* at p. 23.) The parties also contest substantial legal issues, including whether members of the class/collective are eligible to resolve their disputes with Defendants through litigation rather than through arbitration, whether class or collective certification is appropriate in this matter, and whether it was lawful for Defendants to reimburse their delivery drivers using something other than the IRS's standard mileage reimbursement rate. (*Id.* at pp. 23–25.) Accordingly, because the parties dispute both the underlying facts and legal import of those facts, the Court concludes that they have a bona fide dispute. *See Lynn's Food Stores*, 679 F.2d at 1354; *Sawyer v. Health Care Sols. at Home, Inc.,* No. 5:16-cv-5674, 2019 WL 1558668, at *3 (E.D. Pa. Apr. 10, 2019).

Second, as discussed above with respect to final approval of the settlement under Rule 23, *supra* Part VI.A.2, an analysis of the *Girsh* factors supports a finding that the settlement agreement is fair and reasonable. Additionally, as will be discussed below in Parts VII and VIII, the monies the settlement reserves to cover the service payment to Mr. Wood and attorneys' fees

and costs to class counsel are reasonable. Therefore, under both the *Girsh* framework and the Court's independent assessment of the Settlement Agreement, the Court concludes that the Settlement Agreement is fair and reasonable.

Last, the Court considers whether the parties' Settlement Agreement furthers the purposes of the FLSA. It does. The Settlement Agreement only requires the members of the collective to waive their FLSA and state law payment-related claims against Defendants during the class period. (*See* Doc. No. 26-3 at p. 6.) Accordingly, the release is appropriately and narrowly tailored. *See DiFlavis*, 2020 WL 6728806, at *6 (collecting cases).

The Court must pay closer attention to the confidentiality provision of the parties' Settlement Agreement, because "confidentiality clauses in FLSA settlement agreements frustrate the purpose of the Act by restricting information." *Id.*; *see also In re Chickie's*, 2014 WL 911718, at *3 (collecting cases). However, the Settlement Agreement here does not run afoul of the FLSA. The Settlement Agreement, like all of the filings in this matter, is publicly available on the Court's docket, and the parties' confidentiality clause does not restrict the ability of any party to discuss the facts of the case or the terms of the settlement. (*See* Doc. No. 26-2 at p. 22, ¶ m.) Rather, it simply requires the parties and their counsel to keep confidential information shared or learned during discovery or the effectuation of settlement. (*Id.*) Courts have approved confidentiality restrictions that are more restrictive, *see, e.g.*, *DiFlavis*, 2020 WL 6728806, at *7 (approving a settlement agreement that prevented the plaintiff from disclosing the amount of her recovery, and collecting similar cases), and the Court finds that with so much information about this case already publicly available, the parties' limited confidentiality provision does not upset the purposes of the FLSA.

For these reasons, the parties' Settlement Agreement will be approved under the FLSA.

## VII. APPROVAL OF THE SERVICE PAYMENT TO MR. WOOD

The Court will also approve the $2500 service payment to Mr. Wood. Service payments are a common feature of class and collective action litigation. *See Sullivan*, 667 F.3d at 333 n.65. These payments serve "to compensate named plaintiffs for the services they provided and the risks they incurred during the course of [the] litigation and to reward the public service of contributing to the enforcement of mandatory laws." *Id.* (cleaned up). While courts in other Circuits have looked dimly upon service awards or disallowed them entirely, *see Wood*, 2020 WL 7711409, at *5 n.8, "[t]here is substantial precedent from [the Third] Circuit supporting approval of incentive payments," *see Somogyi v. Freedom Mortg. Corp.*, Civil No. 17-6546, (RMB/JS), 2020 WL 6146875, at *9 (D.N.J. Oct. 20, 2020) (collecting cases). We will not deviate from that precedent here. Nonetheless, because the service payment comes out of the common settlement fund, and not the portion of the fund devoted to attorneys' fees, the Court must "carefully review" the proposed payment for fairness to the other members of the class/collective. *Altnor v. Preferred Freezer Servs., Inc.*, 197 F. Supp. 3d 746, 770 (E.D. Pa. 2016) (quoting *Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207, 257 (D.N.J. 2005)).

The question, then, is whether the $2500 service payment to Mr. Wood is fair and reasonable. *See Johnson*, 2021 WL 1387504, at *7; *Altnor*, 197 F. Supp. 3d at 770. The Court finds that it is. To begin, Mr. Wood provided substantial assistance to class counsel, including providing paperwork and information counsel needed to initiate this case and substantiate his claims. *Wood*, 2020 WL 7711409, at *5. Class counsel also reported that Mr. Wood was "instrumental" in the mediation sessions which led to the Settlement Agreement, and that they relied upon him to verify Defendants' representations and to provide context as they reviewed documents during the parties' settlement negotiations. *Id.*

Additionally, the payment to Mr. Wood is relatively small; the $2500 service payment Mr. Wood will receive is 1 percent of the total recovery in this matter. Courts have often approved similar service payments in wage and hour cases. *See, e.g.*, *Johnson*, 2021 WL 1387504, at *7 (approving incentive payments to two representative plaintiffs; each payment constituted 1.8 percent of the collective's total recovery); *Young v. Tri Cnty. Sec. Agency, Inc.*, Civil Action No. 13-5971, 2014 WL 1806881, at *8 (E.D. Pa. May 7, 2014) (approving an incentive award that was approximately 3.5 percent of the class's total recovery).

For these reasons, the Court will approve the payment of a $2500 service award to Mr. Wood.

## VIII.    APPROVAL OF CLASS COUNSEL'S ATTORNEYS' FEES AND COSTS

### A.    Legal Standard

In the Third Circuit, courts generally favor using the percentage-of-recovery method to compensate counsel in wage-and-hour cases brought under the FLSA or state wage and hour laws as a collective or class action. *See Altnor*, 197 F. Supp. 3d at 765.[5] This is because the percentage-of-recovery method, as opposed to compensating attorneys for the number of hours they devote to a case, encourages efficiency and "rewards counsel for success and penalizes it for failure." *In re Prudential Ins. Co. Am. Sales Practices Litig.*, 148 F.3d 283, 333 (3d Cir. 1998) (quoting *In re Gen. Motors Corp.*, 55 F.3d at 821). In determining whether the requested fees are reasonable under the percentage-of-recovery method, the Court considers seven factors:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or the fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by counsel; and

---

[5] "The percentage-of-recovery method . . . awards a fixed portion of the settlement fund to counsel." *Fein*, 2017 WL 4284116, at *11. While the terminology used in these cases is different, the percentage-of-recovery method should be familiar to attorneys; it is simply a contingency fee.

(7) awards in similar cases.

*Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000).

The Third Circuit has also recommended that courts considering awards of attorneys' fees using the percentage-of-recovery method perform a lodestar cross-check, which requires the court to compare the attorneys' recovery under the percentage-of-recovery method with the so-called "lodestar." *Id.* The lodestar is calculated by "multiplying the number of hours [the attorney] reasonably worked on a client's case by a reasonable hourly billing rate for such services given the geographical area, the nature of the services provided, and the experience of the lawyer." *Id.*

### B. Analysis

Here, Mr. Wood seeks $83,333.00 in attorneys' fees, roughly one third of the settlement fund, and $8,564.90 in litigation costs and expenses for class counsel. (Doc. No. 33 at ¶¶ 1–2.) Beginning its analysis with the *Gunter* factors, the Court finds that factor one, the size of the settlement fund and the number of people benefitted by it, weighs in favor of approval. Generally, to avoid a windfall to counsel, as the size of a common fund increases, counsel's percentage of recovery should decrease. *See Fein*, 2017 WL 4284116, at *12. Here, where counsel's efforts have led to the recovery of $250,000 on behalf of a class/collective comprising 532 people, attorneys' fees of 33 percent are reasonable. Indeed, courts have approved similar percentages of recovery in wage and hour cases involving common funds of much larger size. *See id.* (allowing a 33 percent recovery of attorneys' fees from a settlement fund of $1,383,000); *Tompkins v. Farmers Ins. Exch.*, No. 5:14-cv-3737, 2017 WL 4284114, at *9 (E.D. Pa. Sept. 27, 2017) (allowing a 35 percent recovery of attorneys' fees from a settlement fund of $775,000).

Second, there were no objections to the terms of the settlement or to the award of

attorneys' fees from members of the class/collective, which weighs in favor of approval.

The third factor, the skill and efficiency of class counsel, also weighs in favor of approval. As the Court has noted above and in its preliminary approval memorandum, class counsel are experienced wage and hour attorneys whose efforts led to a significant recovery on behalf of the class/collective while saving the time, expense, and uncertainty of trial. *See Wood*, 2020 WL 7711409, at *6, *11; *supra* Part VI.A.2. Because class counsel have prosecuted this matter with skill and efficiency, this factor weighs in favor of approval.

So too does the fourth factor, the complexity and the duration of the litigation. Admittedly, this matter settled relatively early in the litigation, specifically during the discovery stage and less than a year after the case was initiated. (*See, e.g.*, Doc. No. 14.) However, class counsel have devoted nearly 300 hours to the prosecution of this case, a substantial amount of time. (*See* Doc. No. 33-1 at p. 24.) Counsel spent significant time reviewing the salary records for hundreds of members of the class/collective in order to calculate the class/collective's approximate damages. (*Id.* at p. 25.) The claims involved were legally challenging given the debate surrounding whether Defendants' reimbursement practices were lawful under the FLSA. And, the claims were factually complex, because they required an in-depth examination of Defendants' pay records in order to determine the class/collective members' damages. Accordingly, this factor weighs in favor of approval.

The fifth factor, the risk of non-payment, likewise favors approval. As class counsel notes, they took this matter on a contingency basis, agreeing to only take a fee if they were successful. (*Id.* at p. 24.) In any contingency case, there is a risk of non-payment, and even more so in cases such as this one where Defendants have colorable defenses sounding in fact and law. Here, the risk of nonpayment is compounded given Defendants' reportedly precarious

financial situation. (*See id.*) The chance that a large judgment against Defendants could have put them into bankruptcy meant that class counsel took on an even greater risk than they first realized when they accepted the case: Even if they were successful, they may not have been able to recover any fees.

As alluded to above with respect to factor four, factor six, the amount of time devoted to this matter by counsel, also weighs in favor of approving counsel's fee request. Class counsel and their staff have devoted 298 hours to the prosecution of this case. (*Id.* at p. 25.) This is a substantial amount of time that was merited by the factual and legal complexity of this case and the parties' extensive settlement efforts.

Finally, factor seven requires the Court to consider awards in similar cases. In the Third Circuit, courts using the percentage-of-recovery method to calculate attorneys' fees generally approve of fees ranging "from roughly 20–45%." *Marby v. Hildebrandt*, Civil Action No. 14-5525, 2015 WL 5025810, at *4 (E.D. Pa. Aug. 24, 2015) (collecting cases). As mentioned above, courts have awarded attorneys' fees of around 33 percent of class/collective recovery even in cases involving much larger funds, which entitle attorneys to a presumptively lower percentage fee. *See Fein*, 2017 WL 4284116, at *12; *Tompkins*, 2017 WL 4284114, at *9. Courts considering funds of a similar magnitude to the one here have granted attorneys' fees of 33 percent. *See, e.g.*, *Altnor*, 197 F. Supp. 3d at 768–69. Accordingly, the Court finds that a comparison of class counsel's requested fees in this case to awards in similar cases favors approval of the requested fees.

Having concluded that the *Gunter* factors all weigh in favor of approving class counsel's requested fees in this case, the Court next performs a lodestar cross-check to confirm the reasonableness of that conclusion. The lodestar cross-check is an additional method used to

determine if class counsel's requested fees are unreasonable—an opportunity that the Court must take advantage of to fulfill its fiduciary duties to the members of the class/collective.[6]  Class counsel report that the 298 hours they have expended on this matter result in a lodestar of approximately $150,000.  (Doc. No. 33-1 at p. 28.)  Counsel report that the "blended hourly rate"—the average of each attorney's hourly rate weighted for the number of hours the attorneys contributed to the prosecution of this action—is $518/hour.  (Doc. No. 33-2 at ¶ 11.)  Based on this hourly rate, the Court calculates class counsel's precise lodestar to be $154,364.00, which was reached by multiplying counsel's blended hourly rate by the number of hours worked.

The Court notes that the blended hourly rate appears to only account for the *attorneys'* billing rates.  (*See* Doc. No. 33-2 at ¶¶ 9–11.)  Thus, the Court finds class counsel unintentionally may have artificially inflated their lodestar.

The Court's research reveals that paralegals typically account for roughly 11 percent of the hours billed by plaintiffs' attorneys in wage and hour cases, *see, e.g.*, *Jit Shi Gho v. Coco Asian Cuisine, Inc.*, Civ. Action No. 15-6310 (KM) (MAH), 2019 WL 5328857, at *4 (D.N.J. Sept. 27, 2019); *Keller*, 2014 WL 5591033, at *16; *Creed v. Benco Dental Supply Co.*, No. 3:12-CV-01571, at *6 (M.D. Pa. Sept. 17, 2013), and that paralegals in these cases typically bill at around $100/hour, *see, e.g.*, *Jit Shi Gho*, 2019 WL 5328857, at *4 ($100/hour); *Keller*, 2014 WL 5591033, at *16 ($85/hour); *Haught v. Summit Res., LLC*, 1:15-cv-0069, 2016 WL 1301011, at *12 (M.D. Pa. Apr. 4, 2016) ($125/hour).  The Court therefore finds it reasonable to assume that class counsel's paralegals accounted for 11 percent of the time class counsel report dedicating to

---

[6] The Court notes that the *Altnor* court convincingly articulated reasons to be skeptical of attorneys who claim that their higher fees are justified by a lodestar cross-check, because there are ways for attorneys to manipulate the lodestar.  *Altnor*, 197 F. Supp. 3d at 167–68.  However, the Court finds that in this case, the lodestar cross-check is a useful tool.  Whereas the *Altnor* court concluded that the high lodestar did not outweigh the analysis of the *Gunter* factors, which counseled against granting a high-percentage fee, here, the *Gunter* factors all weigh in favor of approving the requested fees.

this case, at an hourly rate of $100/hour.[7]  The Court will therefore reduce class counsel's

lodestar as follows:

|  | **Hours Worked** | **Rate** | **Lodestar** |
|---|---|---|---|
| **Class Counsel** | (298 * 0.89) = 265.22 | $518.00/hour | $137,383.96 |
| **Paralegals** | (298 * 0.11) = 32.78 | $100.00/hour | $3,278.00 |
|  |  | *Total:* | **$140,661.96** |

Using a lodestar of $140,661.96, the Court finds that a lodestar cross-check confirms the

reasonableness of the award of attorneys' fees in this case.  Class counsel will recover

$83,333.00 in attorneys' fees, well below the lodestar amount.  And, this lodestar does not

include the time class counsel will have to dedicate to overseeing the administration of the

settlement, which they estimate could be fifty or sixty hours.  (Doc. No. 33-2 at ¶ 11.)  The

lodestar cross-check therefore confirms the *Gunter* analysis:  the requested attorneys' fees are

reasonable.

The Court also finds that Mr. Wood's request of $8,564.94 for costs expended by counsel

is reasonable.  The vast majority of the expenses were the mediation fees.  (*See* Doc. No. 33-1 at

p. 33.)  The Court finds that all of these expenses were reasonably incurred in the prosecution of

this matter, and the request for $8,564.94 is reasonable.

For these reasons, the Court will approve a payment of $83,333.00 to class counsel as

attorneys' fees, and $8,564.90 as compensation for class counsel's expenses.

## IX.     APPROVAL OF THE *CY PRES* RECIPIENT

The parties' chose the Community Legal Services of Philadelphia as their *cy pres*

---

[7] During the final approval hearing, class counsel informed the Court that his firm "had two paralegals who touched this case, one primarily, and then I had another attorney who had some hours, an associate. I would say the lion's share of the work was my time, my hours."  (Final Approval Hr'g Tr. at 14:13–16.) As such, the Court's estimate that paralegals accounted for 11 percent of the hours billed by class counsel in this matter may be somewhat conservative.  However, given the Court's duty to closely examine the requested attorneys' fees, the Court finds it better to err on the side of over-estimating paralegal hours (and thus decreasing the lodestar).

recipient.  "The purpose of a *cy pres* award in a class action settlement is to provide a method for distributing any residual settlement funds which may exist after all known parties are compensated and the fees and costs are paid."  *Sourovelis v. City of Philadelphia*, _ F. Supp. 3d _, 2021 WL 298703, at *13 (E.D. Pa. Jan. 27, 2021).  Payments to a *cy pres* recipient are made in cases in which it is impracticable or impossible to pay class action settlement funds directly to some or all of the class members; the goal is to put "the excess settlement funds [to] their next best use—a charitable purpose reasonably approximating the interests pursued by the class."  *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 168–69 (3d Cir. 2013).

Here, the parties propose sending the funds remaining from the Rule 23 portion of the settlement fund from checks issued to class members but not cashed after 180 days to the Community Legal Services of Philadelphia.  (Doc. No. 34-1 at p. 32.)  The Community Legal Services states that its "mission is to fight poverty, challenge systems that perpetuate injustice, and change lives through cutting-edge advocacy and exceptional legal representation."[8]  Since its founding in 1966, the organization "has provided free civil legal assistance to more than one million low-income Philadelphians"—including 10,000 in the last year alone.  *Id.*  The services provided by the Community Legal Services include representing low-income Philadelphians in wage and hour cases.[9]

The Court finds that, to the extent there are excess settlement funds from the parties' Rule 23 fund, donating that money to the Community Legal Services will put the money to its next-best use.  Therefore, the Community Legal Services of Philadelphia will be approved as the *cy pres* recipient.

---

[8] *About CLS*, CLS, https://clsphila.org/about-community-legal-services/ (last visited May 8, 2021).

[9] *Wage Claims*, CLS, https://clsphila.org/services/wage-claims/ (last visited May 8, 2021).

## X.  CONCLUSION

For these reasons, the Court grants the motion for approval of the class/collective settlement and approves Plaintiff's request for an award of attorneys' fees, reimbursement of expenses to class counsel, and a service award.

An appropriate Order follows.